## COLDREN V. CLARK, Appellant.

**Partnership: Estoppel.** One partner who frequently overdrew his account can not complain that another partner violated the partnership agreement by doing the same thing.

SAME: ACCOUNTING. One partner is entitled to interest on advances made by him to pay firm obligations, from the date of the advances.

*Appeal from Johnson District Court.*—HON. S. H. FAIRALL, Judge.

TUESDAY, JANUARY 22, 1895.

Suit in equity to establish and dissolve a partnership between plaintiff and defendant, and for an accounting. From a decree and judgment for plaintiff, defendant appeals.—*Modified and affirmed.*

*C. C. & C. L. Nourse* and *Ranck & Wade* for appellant.

*Bills & Haas* and *A. E. Swisher* for appellee.

Deemer, J.—Plaintiff claims that in the year 1875 he, defendant, and one Thomas Hill entered into a copartnership to conduct a banking business in the city of Iowa City, under the name of the Iowa City Bank; that the capital stock of said firm was twenty thousand dollars, of which defendant contributed one-half, and plaintiff and Hill one-fourth each; that in the year 1880 the copartnership acquired title by purchase to some real estate in the aforesaid city, which it now owns, except a certain part conveyed by it to the

Iowa. City National Bank on December 23, 1882; that, about the time of the conveyance of this part of the real estate, the firm ceased to do a banking business, and that during the same year, to-wit, 1882, and before the sale to the Iowa City National Bank, Hill withdrew from the copartnership, and ceased to be a member thereof from that time on. He further avers that the copartnership is indebted in the sum of about thirteen thousand five hundred dollars, and that he has paid individually for the firm, from his own money, the sum of twelve thousand one hundred and fifty dollars; that in July defendant took charge of the firm property, and has received the rents and income therefrom ever since.

The defendant in his answer avers that Coldren became connected with the Iowa City Bank without any definite agreement as to the relation he should sustain to the business; that he did not contribute anything to the institution, and did not keep on deposit any large amount; that his account was frequently overdrawn, and that upon his own motion, and without consent of defendant, he credited himself each month with a salary, amounting to one thousand dollars per annum, and that after crediting these amounts he had but a small average balance, and that on December 1, 1882, when the bank ceased to do business, Coldren had to his credit but one thousand three hundred and forty dollars, which he then drew out and appropriated to his own use. Defendant avers that the real estate referred to in the petition was and is his, and that Hill had an interest therein to the amount of but one thousand eight hundred dollars. He further charges that when the Iowa City Bank commenced business it moved into and occupied a room belonging to him, which it continued to occupy until

about October, 1877, and for which it has paid nothing, and that the same was worth five hundred dollars per annum. He further states that the larger part of the money used, up to March 22, 1880, in the erection of the improvements on the real estate, said by plaintiff to belong to the firm, was his own private funds; that he furnished all but one thousand eight hundred dollars of the original consideration for the purchase of the real estate, and that this one thousand eight hundred dollars was furnished by Thomas Hill; that he and Hill conveyed the property to the Iowa City Bank for the nominal consideration of thirty-two thousand dollars, but in truth and in fact no part of the same was paid to them, and that the consideration named represented only the value of the real estate, less the amount of the improvements built thereon subsequent to December 2, 1875, which according to the books of the bank, amounted to the sum of sixty-four thousand one hundred and fifty-six dollars and seventy-five cents, including items of interest upon the same expended for said improvements, to-wit, eleven thousand five hundred and ninety-eight dollars and ninety-five cents. Defendant further avers that after the execution of the conveyance of date March 22, 1890, plaintiff transferred the account for improvements that was upon the books of the Iowa City Bank to the real estate account of the bank, charging real estate with the sum of sixty-four thousand one hundred and fifty-six dollars and seventy-five cents; and from that date on debited real estate with the amounts paid out for improvements from time to time, and credited real estate with the amounts received for rents of said property, and charged interest thereon from time to time, in the aggregate amount of four thousand five hundred and seventy-seven dollars and twenty-seven cents; and from the twenty-second day of

March, 1880, up to the time the bank ceased to do business, the plaintiff credited the real estate account with the earnings and profits of the bank to the amount of twenty-five thousand two hundred and sixty-three dollars and eight cents. Defendant further avers that the Iowa City Bank sold a portion of this real estate to the Iowa City National Bank for the sum of thirty-five thousand dollars, which was placed to the credit of the real-estate account. He further states that the Iowa City Bank used a portion of the real estate in question from October, 1887, to February, 1890, for its banking business, and has never paid any rent therefor, and that such use was worth the sum of one thousand five hundred dollars per annum. Defendant further avers that in 1882, in a settlement and adjustment of the interests of Thomas Hill in the bank, the estate of Hill abandoned all claim to any interest in the real estate, and his interest was nominally conveyed to defendant and plaintiff, but that in truth and in fact Hill had no interest therein, and no consideration was paid therefor, save only the consideration of the advancements theretofore made in the purchase and improvement of the property by this defendant. He denies any advancements made by the plaintiff for the bank, and denies any indebtedness of the bank to any other person. Admits that he has had possession of the property and real estate not conveyed to the Iowa City National Bank since July 1, 1891, and appends an account of the receipts and disbursements since that date. Defendant further avers that in 1889 he became the owner of the Iowa City Gas Works, and caused a conveyance of the plant to be made to himself and plaintiff, and that thereafter plaintiff held the legal title thereto in trust for defendant, having paid no consideration therefor; that afterward the property was sold to an

incorporation known as the Iowa City Gaslight Company, for the consideration of forty thousand dollars of the preferred stock of the incorporation, which was issued to the plaintiff, but was held in trust for defendant. He further avers that about July 2, 1883, plaintiff sold ten thousand dollars worth of this stock to one Graves, and received and appropriated the proceeds to his own use, or applied it in extinguishment of the debts of the Iowa City Bank, which he had advanced. He also alleges that in May, 1889, Coldren transferred to defendant sixteen thousand dollars of the preferred stock in the gaslight company, and still retains the remainder, to-wit, fourteen thousand dollars worth, for which he is indebted to defendant. He also states that plaintiff received and has retained all the dividends paid on all the stock. Defendant denies that he or the Iowa City Bank is indebted to plaintiff, and denies that plaintiff has any interest in the real estate. He further avers that during the existence of the Iowa City Bank defendant had a claim against the estate of one William Black, of which plaintiff was the administrator, for the sum of eight thousand three hundred and thirty-four dollars and twenty-five cents; that in May, 1882, plaintiff induced defendant to sign a voucher to said estate for the sum of four thousand eight hundred and thirty-four dollars and twenty-three cents, upon the pretense that he had paid the same into the National Bank, and that the same was credited to defendant; that in truth plaintiff had paid into the bank but the sum of one thousand five hundred and ninety dollars, which was credited to defendant's account and plaintiff took credit for the sum of two thousand five hundred dollars, and that plaintiff should account to him for this two thousand five hundred dollars. Defendant also charges that, at the time the Iowa City Bank

closed business, it had on hand, in bills receivable, the
sum of two hundred and one thousand four hundred
and twenty-six dollars and twenty-two cents, which
were in the control of the plaintiff; that plaintiff, when
the National Bank was organized, turned over to it, by
way of sale or discount, bills receivable to the amount
of one hundred and ten thousand six hundred and fifty-
seven dollars and twenty-three cents, and collected the
sum of seventy-seven thousand nine hundred and eighty-
four dollars and thirty-five cents, making an aggre-
gate of one hundred and eighty-eight thousand six hun-
dren and forty-two dollars and eight cents, leaving the
sum of twelve thousand seven hundred and eighty-four
dollars and fourteen cents unaccounted for in the hands
of plaintiff, and that with this amount plaintiff should
be charged.    Defendant further charges that from
December, 1882, to July, 1891, plaintiff collected the
rents of the real estate, and disbursed the expenses for
the same; that his receipts exceeded his disbursements
the sum of seven hundred and eighty-four dollars and
forty-five cents, for which he is chargeable on account.
He also avers that the only indebtedness of the bank,
on account of the construction of the building, at the
close of business, December, 1882, less the credit of
thirty-five thousand dollars for the sale of the banking
house to the National Bank, was the sum of four thou-
sand dollars; and defendant also avers that during the
existence of the Iowa City Bank, from December, 1877,
to December, 1882, plaintiff was the cashier and con-
trolled its affairs; that in March, 1882, he received, on
account for defendant, two checks or drafts in the sum
of twenty-four thousand seven hundred and eighty-four
dollars and seventy-four cents, which were collected
by the Iowa City Bank; that of the sum so collected
there was credited on the account of Dows & Co. the
sum of six thousand dollars, and placed to the personal

account of defendant the sum of thirteen thousand three hundred and twenty-four dollars and seventy-four cents, and that the balance, amounting to five thousand four hundred and sixty dollars, has not been placed to defendant's account or otherwise accounted for, and defendant asks that plaintiff be charged with this upon an accounting.

In reply to this answer and counterclaim the plaintiff avers that he received one thousand dollars per year salary as cashier of the Iowa City Bank, by virtue of an agreement between all of the parties. Avers that the parties who owned the Iowa City Bank organized the National Bank, and that each drew out of the Iowa City Bank the assets belonging to him, and invested the same in the capital stock of the National Bank; and that plaintiff drew out his share in the Iowa City Bank at different times, before the bank ceased to do business, and that the last amount so drawn did not represent his interest in the bank. Plaintiff further avers that when defendant and Hill conveyed the real estate to the Iowa City Bank, for the consideration of thirty-two thousand dollars, the rent of the bank from the time it commenced business down to the time of the transfer was included in the purchase price of thirty-two thousand dollars, and that this rent was not worth to exceed two hundred dollars per year. He denies that the money for the erection of the opera house, from December, 1875, to March, 1880, was exclusively the money of defendant; and plaintiff also alleges that the cost of the real estate to the defendant and Hill was only sixteen thousand six hundred and ninety-two dollars, of which Hill paid one thousand eight hundred dollars. Plaintiff further charges that the consideration named in the deed, of thirty-two thousand dollars, represented the cost of the land, and all that, up to that time, had been actually paid upon

improvements, and in any way invested in the property by defendant and Hill; and that the conveyance was made with the understanding that the Iowa City Bank should pay all claims and demands, against the property for buildings and improvements, which said bank did, as shown by its books.    He denies that the profits earned by the real estate, and received by the bank, amounted to twenty-five thousand two hundred and sixty-three dollars and sixty-eight cents, or to anything near that amount; and denies that defendant owned said real estate individually at any time, or that he is entitled to recover the rents therefor.    Plaintiff further avers that the proceedings in the Hill estate matter were had because, while Hill had no real interest in the real estate, yet he had at one time had an interest as a member of the copartnership; and there was nothing of record showing that he had conveyed his interest to the remaining members of the copartnership, and that the conveyances were made to plaintiff and defendant because they were the owners of the property so conveyed.    He denies the correctness of defendant's account of the receipts and disbursements for the real estate; and further alleges that defendant never owned the Iowa City Gas Works, but alleges that he and defendant owned the same in equal shares; and denies that he held any part of the said property in trust for defendant, or that he (plaintiff) paid no part of the consideration for the said property; and denies that he held any part of the stock in the gas works in trust for defendant.    Plaintiff denies that he has appropriated any part of the money received for the ten thousand dollars in stock sold to Graves, and alleges that the same was used to pay the debts of the gas company, and that none of it was ever used to pay the debts of the bank.    Admits the dividing of the stock in the gas company, but denies that he held the stock in trust for

defendant, or that defendant has any interest therein, or is entitled to any dividends received by plaintiff. Alleges that, as administrator of the Black estate, he paid defendant in full the claim he had against the estate, and that defendant receipted for the same in full because he received the money thereon, and for no other reason. Plaintiff denies any liability growing out of the transfer of the bills receivable of the Iowa City Bank to the National Bank, and denies that the bills receivable were left in his hands or under his control, or that he turned them over to the National Bank, or that he collected any part of the bills receivable, or that any part was left in plaintiff's hands unaccounted for. He avers that the bills receivable were in charge of all the officers of the bank, and that, so far as he knows, all the bills receivable, or the proceeds therefrom, were turned over to the National Bank, and denies that he ever appropriated the same or any part thereof. Denies that he collected rents of the real estate from December, 1882, to July, 1891, and received in excess of the expense the sum of seven hundred and eighty-four dollars and eighty-five cents, or any other sum. Plaintiff alleges that these rents were all paid into the Iowa City National Bank, to the credit of the said real estate account. Denies that the only indebtedness of the bank on account of the building, at the close of business, December, 1882, less the credit of thirty-five thousand dollars, was the sum of four thousand dollars. Admits he was cashier of the bank from December, 1877, to December, 1882, but denies that he alone controlled its affairs. Denies that he received two checks, amounting to twenty-four thousand seven hundred and eighty-four dollars and seventy-four cents, and avers that he has no knowledge or information as to whether the Iowa City Bank collected said checks or not, except what is shown upon the books of the bank, and avers

that he did not keep said books at the time the checks were received, nor did he make the entries therein. He denies that six thousand dollars of said money was applied in payment of the Dows & Co. note, or that thirteen thousand three hundred and twenty-four dollars and seventy-four cents only was placed to the credit of defendant, and denies that the sum of five thousand four hundred and sixty dollars of said sum was not placed to the credit of the defendant or paid over to him, or unaccounted for by plaintiff or any one else, so far as he knows, or that he is chargeable therefor in this suit. He further avers that the matter of the collection of said two checks from the bank on which they were drawn was attended to by the bookkeeper or assistant cashier of the bank, and not by him, and that the proceeds of the collection were properly accounted for and paid over by the person collecting the same. He also avers that the money represented by said checks did not belong to defendant, but he dealt with the same, if at all, as trustee for some other party or company; that, as he is informed and believes, one-half of the money represented by the checks belonged to one Boal, and that at said time the Iowa City Bank paid in currency the said checks or one of them to the said Boal, and that when said checks were collected the proceeds, so far as necessary, were used to replace said currency in the Iowa City Bank. Plaintiff further denies each and every other allegation in defendant's answer.

Upon the issues thus joined there was a decree in the lower court establishing a partnership as claimed by the plaintiff, holding that the real estate was partnership property, and rendering an accounting between the parties, in which it was found that there was due plaintiff from the copartnership the sum of seventeen thousand nine hundred and fifty-four dollars and

seventy-five cents; directing the sale of the real estate by a receiver, who was directed to pay the debts of the copartnership; and that, if there did not enough remain to pay the amount found due plaintiff, then defendant pay plaintiff two-thirds of what remained, with six per cent. interest thereon. The counterclaims of defendant were each and all dismissed, and the partnership was ordered closed up.

From this statement of the case it will be seen that it is a complicated one, and that the pleadings raise almost innumerable issues of more or less importance in reaching an ultimate conclusion. It may also be said that the books of the bank were kept very loosely, and that it is almost impossible to arrive at an accurate and exact result from the record presented. We will take up the different questions presented by counsel in their printed briefs in about the order they have been discussed.

I.  Appellant's counsel insist that there is not sufficient evidence to establish a partnership between plaintiff and defendant and Hill in the original venture. We have examined this question with care, and are satisfied that plaintiff has established a partnership between him and the other parties named, organized to do a banking business in Iowa City, on a capital of twenty thousand dollars, and that the original agreement was that defendant should furnish half the capital, and the plaintiff and Hill each one-fourth; that is to say, they were each to furnish this much money, and were to keep their accounts in such shape that these amounts should be on deposit to the credit of each, respectively. In looking over their books, it is apparent that none of the members of the firm kept the amount on deposit as agreed, but each of them was at times largely overdrawn. It is

clear to us that, after the bank was once fairly organized, it did business almost entirely on the money of its depositors. Not only this, but it built a large banking and opera house upon the real estate in controversy from the money of depositors. In 1882 this bank sold its business and bills receivable to the Iowa City National Bank, organized by and composed largely of the members of the copartnership; and when the transfer was made, or shortly before, each of the members of the copartnership drew from the Iowa City Bank the amount they had standing to their credit on the books of this bank. Defendant complains that plaintiff did not keep on deposit the amount he agreed, but was at times overdrawn, and finally drew out all he put in the Iowa City Bank. We do not think he is in position to complain of this; for the books show he was in the same situation and did the same things himself, and he ought not to be heard to complain of things which he did himself. It would be an endless task, devoid of purpose, to set out the testimony on which we arrive at our conclusions. It is sufficient to say, generally, that defendant's own written declarations and admissions, made during the time the Iowa City Bank was doing business, taken in connection with other strong, and almost equally conclusive, circumstances, establish plaintiff's claim that there was a partnership. We think that the testimony shows just as clearly that, by agreement of the other members of the partnership, plaintiff was entitled to and did receive a salary as cashier in the sum of one thousand dollars per year in addition to his dividends. Plaintiff devoted his whole time to the business, while the other members of the firm gave but a small portion of their time to it.

II. With reference to the real estate, the testimony shows that it was purchased originally by Clark

and Hill for about seventeen thousand dollars, all of
the consideration being furnished by defendant except
about the sum of one thousand eight hundred dollars.
Sometime in 1877, Clark and Hill undertook the erec-
tion of the building which now stands upon the prem-
ises; and in June of that year after but little had been
done upon the improvement, they conveyed the prem-
ises to the Iowa City Bank for the expressed consider-
ation of thirty-two thousand dollars.   This deed has
no date, but was acknowledged February 9, 1880, and
was filed for record February 10, 1880.   It is claimed
by Coldren that, at the time the trade was made
between the bank and Clark and Hill, he had no money
with which to pay his portion of the purchase price of
the real estate, but that the bank agreed to carry his
share of it upon his paying interest thereon, and that it
was agreed that all improvements thereafter made
upon the premises should be paid for by the bank.   The
evidence discloses that at or about the time the transfer
is said to have been made, to-wit, in June, 1877, Clark
and Hill were indebted to the bank in the sum of three
thousand one hundred and sixty-five dollars and thir-
teen cents, in the form of an overdraft; and that this
indebtedness was largely increased, evidently by
amounts paid out in the construction of the building,
until the twenty-second day of March, 1880, when the
amount of their apparent overdraft was sixty-four
thousand one hundred and sixty-five dollars and
seventy-five cents.   On this last-named date this
account is transferred to an account entitled "Real
Estate;" the new account being charged, and Clark
and Hill's individual account being credited, with
sixty-four thousand one hundred and fifty-six dollars
and seventy-five cents.   The real estate account is then
charged with interest and some other items, and cred-
ited with surplus, premiums, and interest, and rents,

and the amount received from the Iowa City National
Bank for the bank building proper, and at the time
of the trial in the court below showed a net debit bal-
ance of four thousand dollars.    In this account is also
a debit of eight thousand two hundred and sixteen dol-
lars and sixty-one cents on March 15, 1880.    The evi-
dence further shows that E. Clark, trustee, had an
account with this bank, and that on March 15, 1880,
this account was debited with the sum of two thousand
and forty-one dollars and forty-four cents.    It also
appears from the testimony that on June, 1877, Clark
and Hill were indebted to the bank, in addition to their
overdraft, on a note in the sum of eight thousand two
hundred and sixteen dollars and sixty-one cents; and
that Dows & Co., a copartnership engaged in building
a railway through Iowa City, composed of one Dows
and the defendant, were indebted to the bank on a note
for the sum of eight thousand and forty-one dollars and
forty-four cents.    The testimony further shows that on
the twelfth day of March, 1880, some one, for the Iowa
City Bank, cashed and received the money on a check
made by one Reno, treasurer of Johnson county, upon
the Johnson County Savings Bank, for the sum of
fourteen thousand seven hundred and eighty-four dol-
lars and seventy-four cents; and another check for the
sum of ten thousand dollars, made by Reno upon the
First National Bank of Iowa City.    The amounts of
these two checks do not appear upon the books of the
Iowa City Bank, except upon the blotter, as we shall
hereafter show.    On the fifteenth day of March, 1880,
E. Clark received credit upon his personal account—
which was then largely overdrawn—in the sum of
thirteen thousand three hundred and twenty-four dol-
lars and seventy-four cents, and there was also credited
to him upon the credit slip six thousand dollars,
marked, "End on Dows & Co. Note," making a total

credit of nineteen thousand three hundred and twenty-four dollars and seventy-four cents. This is all that appears upon the books of the bank which apparently has any connection with the real estate, except that we find on the daily blotter and cash account or balance sheet of the bank of date March 12, 1880, some figures, as follows: Nineteen thousand three hundred and twenty-four dollars and seventy-four cents, one thousand six hundred dollars, one hundred dollars, seventy-two dollars, one hundred dollars; total, twenty-one thousand one hundred and ninety-six dollars and seventy-four cents; and another item, under another column, but with nothing to designate what it is, of twenty-four thousand seven hundred and eighty-four dollars and seventy-four cents. This first set of figures is said by all the parties to be a "minus-cash item," which had to be taken into account in order to balance the cash account. The last set of figures is in no way explained, but we see that they amount to the total of the two checks cashed on that day by some one. On the blotter under date of March 13, 1880, the last-named figures are not to be found, but we do find the following: Nineteen thousand three hundred and twenty-four dollars and seventy-four cents, one thousand seven hundred and seventy-two dollars, and ninety-two dollars and ninety-four cents; with a total of twenty-one thousand one hundred and eighty-nine dollars and forty-nine cents. These are explained as "minus-cash items." The fourteenth of March was Sunday. Turning to the blotter of the fifteenth of March, and these so called minus-cash items are missing, except perhaps one item of one thousand seven hundred and seventy-two dollars. We have referred to these books to show how unsatisfactory and incomplete they are, and how little help we can get from them, and also to

make plain, if we can, the controversy between the parties with reference to the payment for the real estate. Plaintiff, when first upon the stand, testified that the real estate account was finally closed upon March 15th, and that it was done in this way:   First.   The Clark and Hill note was canceled.   We have seen from the books that it was not canceled at the time, but was charged to Clark and Hill's personal account with the bank, and that it was afterward canceled by crediting the account with real estate, and charging the whole of their account to real estate.   Second.   That the Dows & Co. note, amounting to eight thousand and forty-one dollars and forty-four cents, was canceled.   That six thousand dollars was applied upon this note, and credited to Clark is apparent from the books.   But it looks very much to us as if at least two thousand and forty-one dollars and forty-four cents of this note was charged to the account of Clark, trustee, who then had a credit of that amount in the bank.   A credit was made at this time to bills receivable of this amount.   Third.   That Clark was given credit on his personal account for thirteen thousand three hundred and twenty-four dollars and seventy-four cents.   That he was given this credit upon the books is well established; but where it came from can only be shown by oral testimony. Fourth.   Plaintiff claims that from time to time the bank had paid out certain sums in the construction of the building, which were not charged up to the account of Clark and Hill, but were indorsed upon an envelope as paid, and at the end of the month were footed and charged to the account of Clark and Hill; that at the time of the transfer of the real estate, to-wit, June, 1877, there was entered upon this envelope "$2,417.21," which indebtedness was canceled, and never went upon the books of the bank.   These four items make up the thirty-two thousand dollars which plaintiff claims the

·bank paid for the property. The plaintiff further along
in his examination begins to doubt the accuracy of
·his testimony, and then says that he knows the consid-
eration for the property ·was paid, and he thinks in the
manner stated, but he is not sure. On the other hand,
the defendant, while not expressly denying, when on
the witness stand, the receipt of the consideration for
·the property, says that he made the deed to consoli-
·date his interests at the suggestion of the plaintiff, and
for no other reason; and he says that plaintiff's· version
of the manner of payment, for some of the reasons above
suggested, is manifestly untrue, and that this court
should hold there has been no payment for the real
estate by the bank. He admits having received credit
for nineteen thousand three hundred and twenty-four
dollars and seventy-four cents upon his private account,
and upon the note of Dows & Co.; but this he attempts
to explain by saying that this amount came out of the
two checks cashed by the bank on March 12, 1880,
amounting to more than twenty-four thousand dollars,
and that plaintiff converted the remainder thereof to
·his own use. It will be noticed from what we have said
that this twenty-four thousand dollar item appears in
no place upon the books of the bank, except upon the
blotter under date March 12th, and there is nothing
there to connect it with the cashing of the two drafts
or with any other item; and there is nothing to identify
it except the similarity in the amounts. At no place
is there any credit made to any one of the amount of
these two drafts, and on the next day they disappear
from the blotter, although the "minus-cash items" still
continue. It is also to be observed that the two items—
that is, the entry of the twenty-four thousand dollars
and the entry of the nineteen thousand dollars—do not
balance, and there is nothing in and of themselves to
indicate that they relate to the same matters. Clark,

as trustee, had an account with the bank, as we have
stated, but it was never credited with any part of this
twenty-four thousand dollars, where it should have
been if the matter was ever taken into account by the
bank.    The credit, when made, goes to Clark's individ-
ual account, indicating that the bookkeeper when he
made the entry did not understand that this "minus-
cash item" had any relation to the twenty-four thou-
sand dollars which some one received from Clark as
trustee.    Then, again, there is no charge of the amount
credited to Clark, and on the Dows & Co. note, amount-
ing to nineteen thousand three hundred and twenty-
four dollars and some cents, to real estate or any other
account which we can find.    If the books had been
properly kept, there should have been, in order to make
the books balance.    We understand that the books
were not kept by plaintiff, although, no doubt, he had
supervision over them.    The eight thousand two hun-
dred and sixteen dollar note was charged to Clark and
Hill's account, and was afterward paid by charging it
to real estate, and all of the real estate account, amount-
ing to sixty-four thousand dollars, except four thou-
sand dollars, was paid from the profits of the business.
It is thus apparent that this note was paid by the bank
in the manner we have indicated, and that Clark and
Hill have had credit for it.    It is apparent, too, that
Clark has had credit for nineteen thousand three hun-
dred and twenty-four dollars and seventy-four cents
from some source, but just where it is we are unable to
say from the books.    Clark and Hill also owed the bank
an open account,—the sum of two hundred and twelve
dollars and thirty cents, June 4, 1877, and three thou-
sand one hundred and sixty-five dollars and thirteen
cents, June 11th.    Whichever of these amounts was in
existence at the time the trade was made was after-
ward credited and charged to real estate or to buildings

and rent, and Clark and Hill had their account extinguished in the amount that was then due to the bank. There is nothing to show that there was anything on the envelope, kept as before mentioned, which was canceled, except plaintiff's statement. It will be noticed from what we have said that the real estate account was all extinguished, except four thousand dollars, by the surplus and profits of the business, and, as we find plaintiff was a partner in the business, it was in part his money which extinguished it.

It still remains to be determined where the nineteen thousand three hundred and twenty-four dollars came from, for which Clark received credit. Before determining this question, it is well to say that plaintiff testifies that, about the time the twenty-four thousand dollars was paid, he paid to one Boal about ten thousand dollars, as Boal was treasurer of the railroad company, and entitled to the money received upon the checks, which was paid by the county in aid of the railroad; and this is not denied by Boal. If this be true, then it is apparent that the nineteen thousand dollars did not come from these two checks. If it did not come from this twenty-four thousand dollars, then where did it come from? And if it has relation to the real estate, how and when has the bank paid it to any one, and what right has plaintiff to say that it should be considered a payment upon the real estate, if no part of the amount has ever been paid by him out of the earnings of the bank? The most we can say is that defendant has had credit for nineteen thousand three hundred and twenty-four dollars and some cents, without any charge being made upon the books as against it; and that he has withdrawn that amount from the bank, to which it is justly entitled, to pay its debts with. It must be remembered that these transactions occurred from thirteen to sixteen years before the trial

of the case in the court below, and that it cannot be expected the memory of the witnesses will give us much aid regarding the details of the business. The plaintiff, as we have said, testifies positively that the thirty-two thousand dollars was paid, and the defendant simply says he has no recollection of it. The presumption, no doubt, ought to be in plaintiff's favor, for it is hardly possible that defendant would let an account of this magnitude run so long without being paid. We must not overlook the fact, however, that plaintiff does not claim to have advanced the money in cash. Indeed, he says himself he did not have the money to pay with; consequently we must find the payment from something in the books. Construing them, then, as best we can, we find the following: Defendant had credit for nineteen thousand three hundred and twenty-four dollars and seventy-four cents upon his account. As this was charged to no account, it is the same as if withdrawn by defendant from the bank. One-fourth of it plaintiff is entitled to, and, if it is credited on real estate, defendant cannot complain. Eight thousand two hundred and sixteen dollars and sixty-one cents was charged to real estate, and credited to Clark and Hill. This amount was paid by the surplus earnings of the bank, except the sum of four thousand dollars, which the bank owes real estate, leaving a net balance of four thousand two hundred and sixteen dollars and sixty-one cents. The bank also paid Clark and Hill the amount they owed it June 11, 1877, amounting to two thousand five hundred dollars. These are all the amounts we can find on the book which the bank ought to have credited to real estate on the thirty-two thousand dollars agreed to be paid for the real estate. These amount in the aggregate to twenty-six thousand and forty-one dollars and thirty-five cents, leaving a

balance due on real estate of five thousand nine hundred and fifty-eight dollars and sixty-five cents, one fourth of which, or one thousand four hundred and eighty-nine dollars and eighty-eight cents, with six per cent. interest from June, 1877, plaintiff owes to the defendant. If real estate or buildings and rents were charged with the thirty-two thousand dollars, and the other accounts credited with real estate, we would reach the same result, and the books would be in some kind of condition. We also include in this thirty-two thousand dollars the rents accrued upon the building to the time of the sale, for it is manifest, to our minds, they were included in the agreed compensation of thirty-two thousand dollars. This also disposes of the counterclaim for the balance alleged to remain of the twenty-four thousand dollars. We are quite well convinced that this item never entered into the business of the bank, and was never entered upon the books of the bank, or otherwise handled than simply to get the money and pay it over to those entitled to it. We do not think that defendant, who was then engaged in constructing a railroad, allowed this twenty-four thousand dollars, which was a bonus given in aid of the construction of the road, to remain idle very long; and we think that, if he never received it, he would have been heard from long before this trial.

III.   The plaintiff has paid out from his own funds, for the benefit of the bank, the following amounts: Six thousand dollars in June, 1888; five thousand dollars, November 27, 1889; seven hundred dollars, July 24, 1890; four hundred dollars, June, 1891; and the following amounts, as interest on loans made to meet these payments:   Four hundred and eight dollars, May

14, 1885; five hundred dollars, June 8, 1886; six hundred and ninety-four dollars, June 9, 1887. These amounts are not disputed. Plaintiff should have interest on them, from the time they were paid, at six per cent.

IV. With reference to the interest plaintiff claims to have obtained through the Hill estate, it appears to us that Hill simply surrendered whatever he had in the bank, in consideration of the bank's paying the debts. We do not think that plaintiff is entitled to anything on account thereof, unless it could be said that he so acquired an interest in the real estate. We do not think he obtained any additional rights by this release from the Hill estate.

V. As to the gas stock, and defendant's counterclaim with reference thereto: The gas plant was originally sold under a special execution issued on a judgment in favor of E. Clark against the Iowa City Gas Company and others. The property was sold, and deed issued to plaintiff, and plaintiff claims he paid the amount of the bid, to-wit, two thousand four hundred dollars, and that he held the property thereafter, one-half in trust for defendant, and the other half in his own right. The payment of the amount bid is disputed by defendant's counsel, and it is claimed nothing was bid, but that Clark satisfied the judgment, and allowed plaintiff to hold the legal title to the plant in trust for him (defendant). It looks at this time as if, in all probability, nothing was paid. But the deed was made to plaintiff, and it is evident that the judgment on which the sale was had, was obtained to get title to the property at a low figure, and to cut off other bondholders. However this may be, it appears, without conflict in the testimony, that, after the execution sale, the property

was sold to a new corporation for forty thousand dollars of preferred stock in the new institution; that this stock was all issued to plaintiff, and that plaintiff afterwards sold ten thousand dollars of the stock to one Graves, and that he (plaintiff) and defendant thereafter agreed upon a division of the remainder of the stock, by the terms of which agreement plaintiff took fourteen thousand dollars of the stock, and defendant sixteen thousand dollars. This agreement seems to have been entered into understandingly, and it was, no doubt, a settlement of this gas company deal. The testimony shows quite conclusively, we think, that the money received by the plaintiff from Graves for this stock was all expended in liquidating debts of the gas company; so that defendant has no cause of complaint here.

VI. As to the shrinkage in the bills receivable, transferred by the Iowa City Bank to the Iowa City National Bank, there is no doubt there is a shrinkage here as shown by the books. But as we have seen, these books are very incomplete and unreliable, and we would hesitate long to charge plaintiff with this apparent shrinkage upon the books themselves. There is no testimony in any manner connecting plaintiff with this shortage, and, for aught that appears, it may, if chargeable to any one, be as properly charged to any of the other officers of the bank. There are some other circumstances relating to this item which we need not refer to, which tend to account for this shortage. For instance, the transfer was not made immediately upon the listing of the accounts and bills, and there is no allowance whatever made for bad debts.

VII. It is insisted in argument that final results show that the real estate has not been paid for, and that plaintiff looted the bank, whereas the books show a net profit in the business of more than twenty-five thousand dollars. Let us look at this claim for a moment.

The real estate cost the bank more than eighty-five thousand dollars, according to the figures we have. It was largely built with the money of depositors, and not with the money of the firm. The bank received from the National Bank thirty-five thousand dollars, leaving invested in real estate fifty thousand dollars. The firm owes thirteen thousand five hundred dollars, and plaintiff has paid out for the firm, exclusive of interest, twelve thousand one hundred dollars, making the aggregate liabilities of the firm at this time twenty-five thousand six hundred dollars, which, deducted from the fifty thousand dollars invested in the real estate, leaves, in round numbers, twenty-five thousand dollars as the net profits of the firm. This comes as near balancing the books as could be expected. It also shows that this firm, which had withdrawn all its capital, and which at times had no capital, has made twenty-five thousand dollars net, over and above its investment; which, as we have seen, was nothing more than a deposit, which each used as he saw fit.

VIII. With reference to rents from the opera house, alleged to have been received by plaintiff from December, 1882, to July, 1891, we find that the rents were all collected through the National Bank, and passed to the credit of the Iowa City Bank. If not all credited, they yet remain with the National Bank, to be applied on the firm indebtedness.

IX. Taking the figures before given for our basis, and we find that at the time of rendition of the decree in the court below, to-wit, December 5, 1893, there was due plaintiff from the copartnership the sum of fifteen thousand seven hundred and sixteen dollars and eighty-five cents, instead of seventeen thousand nine hundred and fifty-four dollars and forty-five cents, as found by the lower court.

The District Court found that the defendant should be charged with the sum of one thousand five hundred and twenty-two dollars and ninety-two cents net earnings from the real estate for the time defendant has held it. This finding is correct, and we are satisfied that the decree is correct, with the modification of the amount found due plaintiff as above indicated, which should be made in the lower court. We cannot hope to do exact justice between the parties to this litigation. Such a result is not to be expected, when we are presented with such records as are produced in this case. All we can do is to reach approximate results, and settle the unfortunate controversy in the light that we have. We have given the case a great deal of time and attention, and, if we have failed to give to these parties the relief they are entitled to, it is because of the unsatisfactory condition of the books, and the indistinct and uncertain recollection of the witnesses. With the modification above indicated, the judgment will be affirmed; plaintiff to pay one-sixth of the costs of this appeal, and defendant the remainder.—*Modified and affirmed.*