M. A. CASS, Trustee, Appellant, v. MIKE NEY, Appellee.

No. 39757.

NOVEMBER 21, 1929.

*Roseberry & Roseberry,* for appellant.

*C. W. Pitts,* for appellee.

FAVILLE, J.—The appellee, Mike Ney, and the bankrupt, John Ney, are brothers. At the time of the trial, Mike was 54 years old, and John 50. Mike is a bachelor. John is married, and has eleven living children, two having died.  Said brothers have always been farmers. About 1897, they began to jointly operate a threshing machine. The accounts were carried in the bank in the name of John. In 1902, the brothers entered into their first real estate transaction. At that time, they purchased a farm of 238 acres, near Primghar. The title was taken in the name of the brothers jointly, and their father made a contribution toward the purchase price. Mike moved on this farm in 1904, the father having aided him to secure equipment. Mike farmed this place for four years, and deposited the income from the farm in his own name. It is appellee's contention that, on March 1, 1912, he had on deposit in the bank $6,040 of money belonging to him individually.

In 1904, John married, and lived on a farm belonging to his father. In 1909, Mike moved to the farm occupied by John, and the parties lived there together until about 1923, and farmed jointly, increasing their efforts until they were farming a large tract of land, some 600 acres of which they rented. The earnings went into a common fund. Mike used but a small amount of money for his personal expenses.

In January, 1912, the brothers purchased a farm known in the record as the Lynn Township farm. John signed the contract, and took title in his own name. This farm cost $20,800, and was paid for by the certificate of deposit of Mike above referred to, of $6,040, and some $2,400 to $2,600 of John's individual money, a mortgage was assumed, which was paid from joint funds, and the father furnished a portion.

In 1913, the father died, and Mike and John jointly received three farms from his estate. Subsequently, the Lynn Township farm was disposed of by John in a transaction which we shall consider later.

In 1918, the brothers sold a farm of 160 acres which they

had inherited from their father. A part of the purchase price was evidenced by a mortgage of $34,000. This mortgage figures in a settlement between the brothers which we shall discuss at another place.

On June 19, 1920, John purchased a farm known in the record as Section 3, from Durband and Nicholson. This was John's individual deal. The purchase price was to be paid by conveying the Lynn Township farm to Durband and Nicholson and assuming a mortgage of $160,000, and the balance, of $25,515.80, was payable in installments, the last falling due on settlement day, which was March 1, 1921, when deed was to be given. It is this transaction that forms the origin of the matters involved in the instant case. John failed to carry out this contract, and was sued by Durband and Nicholson for specific performance. He was successful in the trial court, but the case was reversed in this court (see *Durband v. Ney*, 196 Iowa 574), on January 16, 1923. True to form, a petition for rehearing was filed, which was denied October 23, 1923. As a result, judgment was entered against John for $34,382.80, and conveyance of the Lynn Township farm to Durband and Nicholson was decreed, and such conveyance was executed later. Section 3 was conveyed to John, and he assumed the outstanding mortgage of $160,000. This mortgage was subsequently foreclosed, the land was sold under a decree of foreclosure, and a deficiency judgment of $21,373.32, with interest, remained. The appellant seeks to subject certain property which John transferred to Mike to the satisfaction of this deficiency judgment.

After the decision of this court in the Durband and Nicholson case, and while petition for rehearing was pending, to wit, on July 2, 1923, a "settlement" was made between the brothers. By this settlement John assigned to Mike his one-half interest in the mortgage before referred to, of $34,000, which the parties owned jointly, the half being estimated to be worth $16,000. John also gave Mike his three notes aggregating $25,000, and secured the same by mortgage on John's interest in the joint real estate. The total consideration purported to be $41,000. It is this settlement which furnished the real battle ground of this lawsuit.

After the settlement of July 2, 1923, the remaining personal property and the real estate owned jointly by the parties re-

mained undivided. In October of that year, John conveyed the Lynn Township farm to Durband and Nicholson. Subsequently, the latter caused an execution to issue on their money judgment against John, and the sheriff levied upon John's interest in the real and personal property of the brothers. In March, 1924, Mike paid in full the amount due on the personal judgment which Durband and Nicholson had obtained against John, the amount then being $36,385.24. He returned to John the $25,000 in notes which had been executed by John at the time of the settlement in July, 1923, and released the mortgages securing them, and paid the taxes on all of the real estate, amounting to approximately $1,000. At that time John conveyed to Mike an undivided interest in all of the real estate by warranty deed, reserving his homestead, and conveyed his interest in the personal property, except some exempt property, by bill of sale. This latter transaction the appellant does not seek to impeach. He seeks to hold Mike to account for the $41,000 of property received from John in the settlement of July 2, 1923.

Was this transaction fraudulent? It is unquestionably true that the business transactions of the two brothers were carried on in a loose and informal manner. No books of account were kept, and no written contracts were executed, showing their dealings with each other. The evidence has taken a wide range, involving numerous business transactions of the brothers, covering a long period of time. The testimony is not wholly consistent nor free from contradictions. We shall not attempt a detailed recital. Prior to the settlement of July 2, 1923, the title to the Lynn Township farm stood in John. He had contracted to convey it to Durband and Nicholson, and under the decree of this court, was required to make such conveyance. Mike had advanced part of the purchase price for said farm, and had an undivided half interest therein. In the deal between John and Durband and Nicholson, John was buying said Section 3 at $415 per acre, and was to convey said Lynn Township farm at $450 per acre. There is evidence tending to show that at said time said prices were the reasonable market value of the respective properties. There is evidence also tending to show that Mike claimed that he was entitled to reimbursement from John for his half of the Lynn Township farm at the value that John was receiving for the same in his trade for Section 3. In any

event, Mike had a substantial interest in said Lynn Township farm, which John, under his contract, had agreed to convey to Durband and Nicholson as his own. Unquestionably he should account to Mike for whatever interest Mike had in said tract, and John's creditors cannot justly complain of a valid settlement for said interest. Under the record in this case, we see no good reason why Mike could not legally settle with John on the basis of the value which John received for the property. There is some evidence indicating that such was the agreement of the parties. The fact that the value of the land greatly depreciated later does not render the transaction between John and Mike fraudulent because made on the same basis of valuations as the deal between John and Durband and Nicholson under which the farm was conveyed.

It is also evident from the record that John had drawn from the common fund for living expenses of himself and family, during the long period of time the brothers had lived and operated together, a greater amount than had been required for the modest personal expenses of Mike. John had reared a large family. Mike had had small personal expenses. There was nothing fraudulent or illegal in the brothers' recognizing the disparity between the amounts of such personal expenses. This amount was computed at $500 for a period of 14 years, amounting to $7,000. We do not think that the allowance of this item in the settlement between Mike and John, under all the circumstances, was fraudulent.

It also appears that Mike had made an advancement of approximately $6,000 on the purchase of the Lynn Township farm at the time it was acquired and the title taken in John. It was not fraudulent to reimburse Mike for one half of this amount.

We also think that the amount which John had taken from Mike's share in the common fund owned by the brothers to pay insurance premiums upon John's life was an item of indebtedness that might be considered by the parties in a settlement, and is not evidence of fraud.

The same is true of the item of $5,000 of Mike's share taken by John from the common fund to make payment on Section 3, and also as to funds withdrawn by John from the fund to pay John's personal attorney fees.

It is strenuously contended that interest could not be allowed on these items, and that allowance for interest in ascertaining the amount of John's indebtedness to Mike was a badge of fraud.  Even if the parties were partners, it would not be illegal nor fraudulent to pay interest on a bona-fide advance of funds made by one partner to pay firm obligations. *Coldren v. Clark*, 93 Iowa 352. And where one partner uses the money of the firm for his own use, interest may be properly allowed thereon unless there is a contrary agreement, express or implied.

From a careful examination of the record, we are persuaded that, on July 2, 1923, John was indebted to Mike in a substantial amount. An accurate accounting had not been had between the brothers. The settlement made on that date was somewhat in the nature of a compromise. The amount of property turned over by John to Mike in said settlement was not, under the record, so in excess of the indebtedness which John then owed to Mike as to constitute a badge of fraud in the making of the transfer. The surrounding circumstances and the acts and conduct of the parties have all been considered. Upon the entire record, we are content to concur in the conclusion of the trial court that the transaction in question was not fraudulent in its character, and not subject to be impeached at the instance of the appellant. The decree of the district court must therefore be, and it is,—*Affirmed.*

ALBERT, C. J., and EVANS, DE GRAFF, and KINDIG, JJ., concur.